

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BERNICE PATTERSON | CIVIL ACTION |
| VERSUS | NO: 04-3132-KDE-SS |
| JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | |

### REPORT AND RECOMMENDATION

Plaintiff, Bernice Patterson ("Patterson"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

### PROCEDURAL HISTORY

On May 27, 2003, Patterson submitted applications for benefits in which she contended that she became disabled on April 3, 2003. R. 53-55 and 158-160. She reported that vertigo prevented her from working. R. 64. On September 11, 2003, the Commissioner denied her application for benefits. R. 46-49. On June 1, 2004, a hearing before an Administrative Law Judge ("ALJ") was



conducted, at which Patterson and a vocational expert testified. R. 28-44. On August 20, 2004, the ALJ issued an unfavorable decision. R. 10-17. On November 5, 2004, the Appeals Council denied Patterson's request for review. R. 4-6. She filed an appeal with this court on November 17, 2004. Rec. doc. 1. The Commissioner answered, and the matter was taken under submission on cross-motions for summary judgment on May 11, 2005. Rec. docs. 5-8. Patterson is represented by counsel in this proceeding.

## STATEMENT OF ISSUES ON APPEAL

Plaintiff's request for judicial review raises the following issues:

a. Did the ALJ err in failing to find Patterson's testimony credible?

b. Did the ALJ err in finding that Patterson could perform her past relevant work?

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The claimant has not engaged in substantial work activity since April 3, 2003, and met the disability insured status requirements of Title II on that date and through December 31, 2007.

2. The claimant has the medically determinable "severe" impairments of diabetes mellitus, hypertension, and vertigo, which do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1.

3. The claimant has pain and functional limitations resulting from the pain, but her complaints of same are not as severe as alleged and not credible.

4. The claimant has the residual functional capacity to perform a light level of work, restricting her to lifting and/or carrying no more than 20 pounds occasionally, 10 pounds frequently; standing and/or walking about 6 hours in an 8 hour day; sitting about 6 hours in an 8 hour day; no limitation on pushing or pulling other than those listed under lifting and/or carrying; and no working at unprotected heights or around dangerous, unguarded moving machinery.

5. The claimant can perform her past relevant work as a hotel housekeeper. This finding is based on the testimony of the vocational expert.

6. The claimant is presently fifty-six years of age, defined as advanced age, with a twelfth grade education.

7. The claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

R. 16-17.

## ANALYSIS

a. <u>Standard of Review</u>.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 91 S.Ct. 1420, 1427 (1971); <u>Newton</u>, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. <u>Id</u>.; <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See <u>Arkansas v. Oklahoma</u>, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. <u>Villa</u>, 895 F.2d at 1022; <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of

fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. <u>Id</u>. §§ 404.1520, 416.920; <u>Newton v. Apfel</u>, 209 F.3d at 453; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. <u>Id</u>. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. <u>Id</u>. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. <u>Id</u>. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. <u>Id</u>. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. <u>Id</u>. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.      Testimony at hearing before ALJ.

Patterson was 56 at the time of the hearing. R. 32. She was divorced. R. 32. She completed the twelfth grade, but did not read well. R. 32-33. She never drove a car. R. 36. Her last day of work was on April 3, 2003 at the Holiday Inn near the airport. R. 33 and 130. On that day she got up in the morning but could not stand up. R. 33. She had worked for Holiday Inn for twenty-six years. R. 33.

Patterson had problems with dizziness all the time. R. 34. She thought it was caused by fluid in her ear. R. 34. The dizziness prevented her from doing anything, including housework. R. 34. She found herself off balance. R. 34. She took medication for diabetes and high blood pressure. R. 34 and 35. When her blood pressure was high, she sometimes got headaches. R. 35. She had

high cholesterol and an irregular heart beat. R. 38.

Patterson testified as follows: She tired easily. R. 38. She did some dusting and mopping in her house. R. 39. She could not do any yard work. R. 39. She did not rest well at night because of the irregular heart beat. R. 39-40. She could not stand for more than twenty minutes before she felt pain and wanted to pass out. R. 40. She could not lift more than five pounds. R. 40. Her daughter assisted her with chores and personal needs. R. 36. She went to church. R. 37. The doctor wanted her to walk but she could not do it. R. 37. She spent a lot of time laying down. R. 37-38. She could not return to work as a hotel housekeeper, because of her dizziness. R. 40-41.

The vocational expert characterized Patterson's hotel housekeeping work as light. R. 42. She testified that a person with a residual functional capacity for light work reduced by an inability to work at unprotected heights or dangerous moving machinery could perform the housekeeping job. R. 42. If she could only stand for twenty minutes at a time, lift ten pounds occasionally, and five pounds frequently she could not work as a housekeeper. R. 43. With these limitations, she could only perform sedentary work. R. 43. If she required significant periods of recumbent rest, there would be no work that she could perform. R. 43.

c.  Medical Evidence.

On January 1, 2003, Patterson was seen for nutrition assistance at Medical Center of Louisiana ("Charity"). She was exercising two to three times a week with a goal of five times a week. She was encouraged to maintain her diet. R. 144. On February 6, 2003, Patterson was seen at Charity. She was continued on her medication and told to return in two to three months. R. 142-43.

On April 5, 2003, Patterson was seen at the East Jefferson General Hospital emergency room

by Carl McAllister, M.D.[2]  R. 97  She reported dizziness for two days.  She reported nausea and vomiting. R. 97.  A CT scan and other laboratory work did not reveal a hemorrhage.  R. 99-100.  The diagnosis was vertigo with an inner or central ear problem as the possible cause.  R. 98.  On April 9, 2003, she was seen at Charity for complaints of dizziness.  R. 141.  On April 28, 2003, she returned to Charity for complaints of heart palpitations and elevated blood sugar.  R. 131-32.  On July 3, 2003, she reported a sinus headache.  R. 124.  She was told to return in three months.  R. 125.  On August 11, 2003, she appeared for a follow-up visit.  She reported that she was not feeling well.  She was exercising two to three times a week.  She was given instructions on her diet.  She was to return in three months.  R. 123.  On September 17, 2003, she was seen at Charity.  R. 120.  She was told to return in six weeks.  R. 121.  On October 23, 2003, she was diagnosed at Charity with diabetes and hypertension.  R. 153.

On March 26, 2004, Patterson was seen at Charity for complaints of dizziness and nausea.  R. 151.  The diagnosis was vertigo.  R. 155.  On May 6, 2004, she was seen at Charity.  She was told to return in eight weeks.  R. 147.

Based on the medical records and Patterson's application, a medical consultant for the Commissioner concluded that she could perform medium duty work.  R. 110-117.  On August 20, 2003, Patterson was seen by Miljana Mandich, M.D., a specialist in internal medicine, for a consultative examination.  R. 102-08.  The diagnosis was poorly controlled hypertension and adult onset of non insulin dependent diabetes.  Her physical examination was completely normal except that she was moderately overweight and her blood pressure was 180 over 100.  R. 105.  A chest x-ray did not reveal any evidence of active pulmonary or cardiac pathology.  R. 109.

---

[2] Dr. McAllister's speciality was not identified.

d. <u>Plaintiff's Appeal</u>.

<u>Issue No. 1</u>.   Did the ALJ err in failing to find Patterson's testimony credible?

Patterson contends that the medical evidence demonstrates that she suffers from hypertension and therefore her assertions of dizziness must be regarded as truthful. She urges that her outstanding work history also demonstrates her credibility. She testified that she experienced dizziness all the time. R. 34. She tired easily and spent a lot of time lying down. R. 37-38. She did very little housework. R. 34 and 39. She depended on her daughter to assist her with chores and personal needs. R. 36. She could not stand for more than twenty minutes before she felt pain and wanted to pass out. R. 40. She could not lift more than five pounds. R. 40. The doctor wanted her to walk but she could not do it. R. 37. The ALJ found that her subjective assertions of daily dizziness, frequent headaches, blurred vision secondary to increased blood pressure, and severe fatigue were not documented in the medical record. R. 15. He found that her description of her activities of daily living was exaggerated, lacked corroboration or substantiation in the medical record evidence and was not credible. R. 15.

The judgment as to the credibility of testimony at the hearing is the specific province of the ALJ, and his evaluation of the severity of the subjective complaints is entitled to considerable judicial deference. <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ, as fact-finder, has the duty to evaluate a claimant's credibility. <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1384 (5th Cir. 1988). The ALJ found, based on the record, that Patterson's description of her limitations was not credible. The Fifth Circuit has held that, in such a case, a reviewing court should not substitute its judgment for that of the Commissioner. <u>See</u> <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999). The issue is whether there is substantial evidence in the medical record to support the ALJ's finding

8

that she lacked credibility.

The medical records reveal that Patterson's first complaint of dizziness was on April 5, 2003, when she went to the emergency room at East Jefferson. She was released that same day. R. 97. Prior to that she was diagnosed at Charity with hypertension, high cholesterol and diabetes mellitus. R. 142. A few days after the emergency room visit, she reported to Charity that she continued to experience dizziness. R. 141. Although she returned to Charity on April 28, 2003 with reports of elevated blood sugar and heart palpitations, she denied dizziness. R. 132-33. On July 3, 2003, she reported a sinus headache, but did not complain of dizziness. R. 124. On August 11, 2003, she appeared for a nutrition appointment and reported that she was exercising two to three times a week. R. 123. Visits to Charity on September 17 and October 23, 2003 do not include reports of dizziness. R. 120 and 154. Patterson did not return to a doctor until March 26, 2004 when she reported dizziness and nausea. R. 151. On May 6, 2004, her hypertension medication was changed. R. 146. Her August 20, 2003 physical examination by Dr. Mandich was completely normal except she was moderately over weight and her blood pressure was 180 over 100. R. 105.

These medical records provide substantial evidence for the ALJ's determination that Patterson was not credible. Her appeal is an attempt to have the court substitute its judgment regarding her credibility for that of the ALJ, which is not permitted. <u>Brown</u>, 192 F.3d at 496 (5th Cir. 1999).

<u>Issue No. 2</u>.   Did the ALJ err in finding that Patterson could perform her past relevant work?

Patterson urges that, based on the testimony of the vocational expert, she could not return to her hotel housekeeping work and is limited to sedentary work at best. The expert testified that if Patterson's description of her limitations was accepted, she could not work as a housekeeper and she

could only perform sedentary work. R. 43. If her testimony that she needed significant periods of recumbent rest was accepted, there was no work that she could perform. R. 43. This portion of the expert's testimony merely reflects Patterson's descriptions of her limitations. The ALJ found that these limitations were not credible. For the reasons discussed above, there is substantial evidence to support this finding.

Patterson also argues that the medical evidence demonstrates that she was limited to sedentary work. She urges that individuals with poorly controlled hypertension also experience severe dizziness. She contends that because the medical records demonstrate poorly controlled hypertension, her statements concerning the daily occurrence of dizziness must be accepted as true.

Although she reported to Dr. Mandich that she began experiencing high blood pressure in her twenties, the first report of dizziness was not until April 5, 2003. R. 97 and 102. By the end of that month she denied dizziness even though she was experiencing elevated blood sugar and palpitations. R. 132-33. The medical reports do not contain further complaints of dizziness until March 25, 2004. R. 151. The reports do not support claims of daily occurrences of dizziness. There is substantial relevant medical evidence to support the ALJ's finding that Patterson could perform light duty work and return to her prior work as a hotel housekeeper.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment (Rec. doc. 8) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 7) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 26th day of May, 2005.

_____
SALLY SHUSHAN
United States Magistrate Judge
